## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| R.B.A, *individually and on behalf of G.A.*, and R.M.A., *individually and on behalf of G.A.*,<br><br>                Plaintiffs,<br><br>v.<br><br>JERSEY CITY BOARD OF EDUCATION,<br><br>                Defendant. | Civil Action No. 15-cv-8269 (LDW)<br><br>**<u>MEMORANDUM OPINION</u>** |

Before the Court is Plaintiffs' Motion for Attorneys' Fees brought pursuant to § 1415 of the Individuals with Disabilities Education Act.  20 U.S.C. § 1415(i)(3)(B)(i).  (ECF No. 132). The Motion arises from Defendant Jersey City Board of Education's year-and-a-half long failure to reimburse Plaintiffs, parents of a disabled child, for their child's educational evaluation costs in the amount of $16,716.25, as required under the parties' Court-approved Settlement Agreement. (*See* ECF Nos. 119, 120).  Defendant opposes the Motion. (ECF No. 141)  The Court decides the Motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.[1] Having considered the parties' submissions, and for the reasons set forth below, the Motion is **GRANTED.**[2]

---

[1]     The undersigned issues this Memorandum Opinion and Order in accordance with the parties' December 14, 2020 Notice of Consent to proceed before a Magistrate Judge for all further proceedings.  (ECF No. 118).

[2]     As set forth herein, the Court grants Plaintiffs' Motion for Attorneys' Fees but reduces the requested revised lodestar award from $49,729.50 to $42,126.50.

## I.        BACKGROUND

Plaintiffs R.B.A. and R.M.A. ("Plaintiffs") brought this action individually and on behalf of their son G.A., a child with "profound global developmental delays" and a visual impairment, alleging that defendant Jersey City Board of Education ("Defendant" or "the District") denied G.A. a free and appropriate public education in violation of federal law.  Plaintiffs asserted claims under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and Title II of the American with Disabilities Act, 42 U.S.C. § 12131 *et seq* ("ADA").  (Complaint, ECF No. 1 ¶¶ 1, 21).  Through this federal action, Plaintiffs challenged the State of New Jersey Office of Administrative Law Judge's due process determination in favor of the District and sought compensatory education, reimbursement for an independent educational evaluation of G.A., programmatic changes to his individualized education plan, and declaratory relief arising from the District's alleged violations of G.A.'s rights under the IDEA, Section 504, and the ADA.  Plaintiffs also sought statutory attorneys' fees and costs.  (*Id.* ¶¶ 1-2; Exh. A).

After years of litigation and numerous Court-conducted settlement conferences before the previously assigned Magistrate Judge, the Hon. Steven C. Mannion, and the undersigned, *see* ECF Nos. 52, 90, 102, 103, 105, 107, the parties reached a settlement in principle before the undersigned on October 19, 2020.  (ECF No. 116).  The settlement was then reduced to a writing on November 10, 2020.  (ECF No. 119).  Pursuant to the Agreement, the District was required to provide 1312.5 hours of compensatory education to G.A. and to reimburse Plaintiffs, as prevailing parties, for $250,000.00 in attorneys' fees and $16,716.25 in costs arising from G.A.'s education evaluations.  (*See* Settlement Agreement, ECF No. 119-1).  As a condition to the Agreement, Plaintiffs requested and the District agreed to this Court's retention of jurisdiction over enforcement until all

2

obligations of the settlement were satisfied.  (*See id.* ¶ 15; ECF No. 120).  The parties filed a Consent Order consenting to the jurisdiction of the undersigned for all further proceedings, which was entered by the Honorable Madeline Cox Arleo, U.S.D.J. on December 14, 2020.  (ECF No. 118).  Upon the request of the parties, the undersigned reviewed and approved the terms of the Settlement Agreement and retained jurisdiction to enforce them, as memorialized in the December 21, 2020 Order of the Court.  (ECF No. 120).

In accordance with the Agreement, the District paid to Plaintiffs' counsel's firm all monies owed for attorneys' fees but failed to timely reimburse Plaintiffs for the $16,716.25 arising from G.A.'s evaluation costs.  (*See* Deft. Brief at 1-2, ECF No. 141).  Per the Agreement, the District was to remit payment for those costs within sixty days of submission of the relevant invoices. Plaintiffs' counsel provided the invoices documenting the evaluation expenses on February 16, 2021.  Reimbursement therefore was to be made on or before April 17, 2021.  (*See* Settlement Agreement ¶ 2, ECF No. 119).  From April 2021 to July 2022, Plaintiffs' counsel tried and failed to enforce Plaintiffs' right to those educational evaluation costs without seeking Court intervention.  (*See id.*).  On July 10, 2022, over a year after the agreed reimbursement was to be made, Plaintiffs filed a formal Motion to Enforce the Settlement Agreement and sought an award of attorneys' fees that had accrued in pursuing enforcement of the Court's December 21, 2020 Order.  (ECF No. 121).  The Motion to Enforce, having been filed without premotion leave of Court, was terminated, and was instead treated as a letter application to which Defendant was Ordered to respond.  (*See* ECF No. 123).  In response, the District acknowledged its delinquency under the Agreement and requested that the undersigned allow it thirty days to issue the outstanding payment to Plaintiffs' counsel.  The Court "So Ordered" the District's letter request. (ECF No. 125).

The Court, not having received notice that the District had completed reimbursement within the time set by the Letter Order, convened a conference on September 21, 2022 to address Defendant's failure to comply with the Court-approved Settlement Agreement. To obviate the need for further motion practice on the Motion to Enforce, the undersigned directed the District to make all necessary efforts to meet its obligation by the next Court conference on October 18, 2022. (*See* ECF No. 127). Defense counsel then failed to appear before the undersigned on that date. (*See* ECF No. 129). The Court convened yet another conference on November 14, 2022, during which Plaintiffs' counsel informed the undersigned that the District finally had paid the amount owed under the Settlement Agreement. Counsel for Plaintiffs requested leave to file an application for attorneys' fees for his enforcement activities, which request to file the Court granted. The instant Motion followed. (ECF No. 132).[3]

Plaintiffs assert that they are entitled to attorneys' fees associated with their enforcement of the Court-approved Settlement Agreement pursuant to § 1415(i)(3) of the IDEA, which authorizes the Court to award reasonable fees to the "prevailing party" in "any action or proceeding" brought under the statute. (Pl. Brief at 6-9, ECF No. 132). The District responds, *inter alia*, that although Plaintiffs prevailed under the Settlement Agreement, they are not "prevailing parties" under IDEA in the context of this Motion for fees that accrued post-settlement. (Deft. Opp. at 9-13). For the reasons set forth below, the Court finds that Plaintiffs, as prevailing parties, are entitled to reasonable attorneys' fees for efforts to enforce the parties' Settlement Agreement.

---

[3]     At the request of the parties, the undersigned suspended consideration of the Motion for several months to allow the parties to resolve the requested fees amicably. (*See* ECF Nos. 131, 136, 137). Counsels' efforts to settle the fee dispute having failed, the undersigned entered a schedule for the remaining briefing on the Motion. (*See* ECF No. 140).

## II.    LEGAL STANDARD

To adjudicate the instant Motion for attorneys' fees, the Court must first determine whether Plaintiffs achieved "prevailing party" status under the IDEA by virtue of the Court-approved Settlement Agreement and, if so, whether such status continued into counsels' post-settlement enforcement activities such that fee-shifting is available under the statute.   20 U.S.C. § 1415(i)(3)(B).   If that is so, the Court must then determine whether the fee requested is "reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Although under the "American Rule," parties are generally responsible for their own attorneys' fees, *see Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240 (1975), the IDEA explicitly authorizes an award of attorneys' fees "as part of the costs to the parent of a child with a disability who is the prevailing party." *P.N. v. Clementon Bd. Of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006) (quoting *J.O. v. Orange Twp. Bd. of Educ.*, 287 F.3d 267, 271 (3d Cir. 2002)); *see* 20 U.S.C. § 1415(i)(3)(B) (granting courts discretionary power to "award reasonable attorneys' fees" to "a prevailing party" "in any action or proceeding" brought under the IDEA).

The Supreme Court has adopted "'a generous formulation' of 'prevailing party' status" as included in civil rights fee-shifting provisions.   *Id.* at 855 (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist*., 489 U.S. 782, 792 (1989)).   Plaintiffs may be considered "prevailing parties" for attorneys' fees purposes "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *John T. ex rel. Paul T. v. Del. County Intermediate Unit*, 318 F.3d 545, 560 (3d Cir. 2003) (quoting *Hensley*, 461 U.S. at 433). In *Buckhannon Bd. V. West Virginia D.H.H.R.*, 532 U.S. 598 (2001), the Supreme Court "acknowledged that a party benefitting from a settlement agreement … could be a 'prevailing party,' provided the 'change in the legal relationship of the parties 'was in some way judicially

5

sanctioned.'" *John T.*, 318 F.3d at 556 (quoting *Buckhannon*, 532 U.S. at 605).  The *Buckhannon* Court "distinguished between court-approved settlements and private settlements, stating that 'private settlements do not entail the judicial approval and oversight involved in consent decrees. And federal jurisdiction to enforce a private contractual settlement will often be lacking[.]" *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 164 (3d Cir. 2002) (quoting *Buckhannon*, 532 U.S. at 604 n.7).  The Third Circuit, in evaluating the parties' agreement in *Truesdell* under *Buckhannon*, found that the stipulated settlement bore the characteristics of a consent decree and therefore served as a "proper vehicle for rendering one side a prevailing party," because it:  "(1) contained mandatory language, (2) was entitled 'Order,' (3) bore the signature of the District Court judge, and (4) provided for judicial enforcement."  290 F.3d at 165.

Prevailing parties to judgments, consent decrees, and enforceable settlement agreements may be awarded reasonable attorneys' fees not only for legal work undertaken to obtain prevailing party status in the first instance, but also for efforts to enforce "the full scope of relief afforded by the consent decree."  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 558 (1986) (concluding that attorneys' monitoring efforts can be "as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom"); *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments."); *P.J. by & through W.J. v. Connecticut State Bd. of Educ.*, 931 F.3d 156, 167 (2d Cir. 2019) (holding prevailing party to IDEA settlement entitled to reimbursement for "appropriate efforts by counsel to safeguard the scope of relief that a consent decree affords"); *K.N. v. Passaic City Bd. of Educ.*, 2011 WL 5157280 (finding Plaintiffs' counsel's post-settlement activities compensable under the IDEA); *P.G. v. Brick Twp. Bd. of Educ.*, 124 F. Supp. 2d 251, 263-64

6

(D.N.J. 2000) (concluding that "compliance and monitoring activities may be compensated under the IDEA"); *Jacqueline N. v. Sch. Dist. of Philadelphia*, No. CV 19-3748, 2020 WL 529890, at *4 (E.D. Pa. Jan. 31, 2020) (holding that "the IDEA authorizes the award of counsel fees to prevailing parents in an action to enforce the written settlement agreements").

### III.   DISCUSSION

#### A. Plaintiffs' Entitlement to Attorneys' Fees

In the present case, the District argues that fee-shifting is not available to Plaintiffs under the IDEA because the parties' Agreement constitutes a private settlement and, "even though the U.S. District Court for the District of New Jersey retained jurisdiction for the purposes of enforcement, such action does not impose *judicial imprimatur* necessary to allow Plaintiffs to achieve prevailing party status."  (Deft. Brief at 12).  The District further asserts that, even if the Agreement is not a private agreement, post-settlement fees are not available to Plaintiffs because the District's years-delayed payment of the agreed costs was not "judicially sanctioned," as the Court did not formally rule on Plaintiffs' Motion to Enforce the Settlement Agreement.  (*Id.* at 13). The Court addresses and rejects each argument in turn.

The District "does not dispute that pursuant to the IDEA, Plaintiffs were the prevailing party as it related to preceding litigation which led to the Settlement Agreement" whereby Plaintiffs received "compensatory education in the sum of 1312.5 hours for educational services, evaluations and other services as set forth in the agreement." (*Id.* at 9).  Instead, the District argues that the Court's actions with regard to the Settlement Agreement did not entail the necessary "*judicial imprimatur*" to render the Agreement anything more than a private settlement.  The Court disagrees and finds that the parties' stipulated settlement together with the Court's December 21 Order meet the requirements set forth by the Third Circuit in *John T. and Truesdell*.

First, unlike in *John T.*, Plaintiffs achieved the successes embodied in the Settlement Agreement through numerous negotiation sessions before this Court.  *See* 318 F.3d at 560 (finding that an IEP achieved through "negotiations out of court" was insufficient to confer prevailing party status).  The terms of that Agreement were then incorporated with specificity into the December 21, 2020 Order of the undersigned, which provided that "the Court approves the settlement memorialized in plaintiffs' December 21, 2020 submission (ECF No. 119-1) and approves the compensatory education and attorneys' fees as set forth therein." (ECF No. 120).  Those settlement terms contain mandatory language providing that the District "will" and "shall" fulfill certain obligations.  (ECF Nos. 120; 119-1 ¶¶ 1-5); *See P.N.*, 442 F.3 at 853 (noting that terms of an administrative law judge's Consent Order contained the requisite mandatory language by stating that the Board of Education "will do certain things").  Further, the relief was contained in an Order bearing the signature of the undersigned, and provided for judicial enforcement, making the "parties' obligation to comply with the terms of the settlement agreement … part of the order of dismissal."  *Id.* (quoting *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994)).  Therefore, contrary to the District's assertion, the attributes of the parties' stipulated settlement render the Agreement more akin to a consent decree "enforceable through the supervising court's exercise of its contempt powers,"[4] than a private settlement enforceable "only through a new action for breach of contract."  (Deft. Brief at 10-11) (quoting *Haden ex rel. Legear v. Reagan*, 208 F.3d

---

[4]      The Court notes that, pursuant to 28 U.S.C. § 636(e)(4), upon entry of the parties' Consent to Magistrate Judge Jurisdiction (ECF No. 118), the undersigned was authorized to "exercise the civil contempt authority of the district court."  Therefore, that it is the signature of the undersigned, not a District Judge, affixed to the December 21, 2020 Order is immaterial for this prevailing party inquiry, as the undersigned had the power to issue civil contempt Orders for the District's noncompliance.

697, 699 (8th Cir. 2000)).  Accordingly, the District's argument that fee-shifting is unavailable because the settlement at issue was a mere private agreement lacking the power of judicial sanction is rejected.

Having found that Plaintiffs obtained prevailing party status within the meaning of Supreme Court and Third Circuit precedent upon entry of the Court's December 21 Order, the Court considers the District's argument that enforcement fees are not available because the District simply "complied with its obligations under the Settlement Agreement."  (Deft. Brief at 13).  As noted above, prevailing parents under the IDEA may recover for attorneys' time spent seeking compliance with and enforcement of settlement agreements. *See P.G.*, 124 F. Supp. 2d at 263 (collecting cases concluding that enforcement and compliance activities are compensable under IDEA).  The Court finds unconvincing the District's attempt to characterize the post-settlement proceedings before the undersigned as lacking the requisite "*judicial imprimatur*" because the Court did not ultimately issue an Order on Plaintiffs' Motion to Enforce.  It is clear from the record that the District's payment was not simply voluntary and that it was instead necessary for Plaintiffs to file the Motion to Enforce after their counsels' months-long efforts to resolve the outstanding payment without judicial intervention had failed.  Following the filing of that Motion, the Court immediately interceded and convened numerous Court conferences thereafter to address the District's failure to comply with the Agreement and induce its tardy compliance.  (*See* ECF Nos. 121-130).  The history of this dispute leaves no question that only with the Court's prodding and follow-up did the District finally do what it had contracted to do more than a year prior.  Indeed, without the Court's intervention, Plaintiffs still might be awaiting payment of their costs.

That the undersigned resolved Plaintiffs' application to enforce through Court conferences rather than issuing an Opinion on the Motion is of no moment.  As in *People Against Police*

*Violence v. City of Pittsburgh*, these proceedings "merely allowed plaintiffs to raise their concerns prior to [renewed] enforcement, a process that reached the same result (resolution of plaintiffs' claims) with greater judicial efficiency." 520 F.3d 226, 235 (3d Cir. 2008); *see also Johnson v. City of Tulsa*, 489 F.3d 1089, 1108 (10th Cir. 2007) ("[W]e cannot accept the proposition that attorney fees for postdecree efforts are compensable only if they result in a judicially sanctioned change in the parties' legal relationship. The Decree itself was such a change, and attorney fees incurred for reasonable efforts to enforce that change--that is, protect the fruits of the Decree--are compensable."); *ACLF v. Dep't of Corr.*, No. 09-179-SLR-SRF, 2014 U.S. Dist. LEXIS 129975, *10 (D. Del. Sept. 17, 2014) ("No additional change in the parties' legal relationship is required to establish [plaintiffs'] status as a prevailing party."). Where, as here, "[a]t the end of the proceedings, plaintiffs had achieved precisely what they sought on an enduring basis," the Court finds no reason why they "should be denied fees merely because they participated in a more efficient, cooperative process." *People Against Police Violence*, 520 F.3d at 236.

In sum, through the efforts of their counsel and this Court's exercise of its retained jurisdiction to enforce the Agreement, Plaintiffs finally obtained what was owed to them under the settlement and are, therefore, entitled prevailing party attorneys' fees arising from their attorneys' enforcement efforts.

### B. Reasonableness of Plaintiffs' Requested Fees

The Supreme Court has instructed that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The product of that calculation, termed the "lodestar," is presumed reasonable. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). The party seeking a fee award must

submit evidence to support both the hours worked and proposed hourly rate.  *Hensley*, 461 U.S. at 433.

In their opening brief, Plaintiffs sought a total of $36,465.00 in attorneys' fees, comprised of 43.5 hours worked by David J. Berney, Esq. billed at an hourly rate of $580.00 and 21.4 hours worked by Nina Russakoff, Esq. billed at an hourly rate of $525.00.  (Pl. Brief at 10).  The District challenges the reasonableness of the requested fees as to both counsels' proposed hourly rates and number of hours billed.  (Deft. Brief at 14-26).  The Court addresses the District's arguments as to each, in turn.[5]

### i.      Reasonableness of Plaintiffs' Proposed Hourly Rates

Under the IDEA, as with other federal fee-shifting statutes, a reasonable hourly rate is calculated according to "rates prevailing in the community in which the action or proceeding arose[.]"  20 U.S.C. § 1415(i)(3)(C); *see P.G.*, 124 F. Supp. 2d at 261.  The prevailing party bears the burden of demonstrating "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity."  *Washington v. Philadelphia Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996) (quoting *Student Pub. Int. Rsch. Grp. of New Jersey, Inc. v. AT & T Bell Labs*, 842 F.2d 1436, 1450 (3d Cir. 1988)).  Generally, this burden is satisfied through the attorneys' own affidavits, as well as affidavits of other attorneys in the relevant legal community "attesting to the range of prevailing rates charged by attorneys in the market with similar skill and experience."  *P.G.*, 124 F. Supp 2d at 261.

---

[5]      In their Reply brief, Plaintiffs' counsel supplemented the initial billing records submitted to the Court in support of the fee application, seeking fees for an additional 23.6 hours of attorney time, which they contend was expended since filing the instant Motion.  Counsels' revised requested lodestar increased by over $13,000.00 to $49,729.50.  (ECF No. 142).  The Court addresses the reasonableness of counsels' additional claimed hours *infra.*

If the prevailing party makes a *prima facie* showing that the rates requested represent prevailing market rates, "the party opposing the fee award can rebut the reasonableness of the proffered hourly rate with record evidence." *L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 296 (3d Cir. 2010) (citing *Smith v. Philadelphia Hous. Auth.*, 107 F.3d 223, 225 (3d Cir.1997)). If the proposed hourly rates are disputed with evidence in the record, rather than mere argument, the court must conduct a hearing to determine the reasonable market rates. *Id.*

In this case, Plaintiffs' attorneys, David Berney and Nina Russakoff, have furnished sworn Declarations in support of the reasonableness of their claimed hourly rates, which set forth each attorney's qualifications and extensive legal experience. (Pl. Exhs. H, I, ECF No. 132-1). Plaintiffs further submit the sworn Declarations of five experienced education law practitioners, stating, *inter alia*, that the proposed hourly rates are reasonable for attorneys of Mr. Berney's and Ms. Russakoff's respective levels of experience and expertise, and that those rates are within the range of prevailing rates charged by attorneys of similar skill and experience in both New Jersey and Philadelphia, where the firm of Plaintiffs' counsel is located. (*See* Pl. Exhs. N–R). Plaintiffs also submitted evidence of a current retainer agreement with a different client at the requested hourly rates of $580.00 for Mr. Berney and $525.00 for Ms. Russakoff, as well as the 2016 retainer agreement with Plaintiffs in this action.[6] (Pl. Exhs. J, K).

The District opposes Plaintiffs' requested rates on several grounds. First, the District contends that Mr. Berney and Ms. Russakoff have not based their proposed billing rates on the prevailing market rate of this District, but rather that of prevailing rates in Philadelphia, the situs

---

[6]    Although the 2016 retainer agreement with Plaintiffs provides for an hourly rate of $495.00 for Mr. Berney, "a reasonable hourly rate should be determined by examination of the prevailing market rates in the relevant community at the time of the fee petition, not the time the legal services were performed." *L.J.*, 373 Fed. Appx. at 296.

of their law firm.  (Deft. Brief at 14-20).   Relatedly, the District seems to argue that the Declarations of the education attorneys submitted by Plaintiffs "are meaningless" because, *inter alia*, some of those attorneys practice education law in either or both Pennsylvania and New Jersey and are therefore not competent to attest to prevailing rates in this State.  (*See* Deft. Brief at 16-18).

The District is correct that the Third Circuit has adopted a "forum rate" rule for determining the appropriate community market rate, under which the "'relevant rate is the prevailing rate in the forum of the litigation' unless 'the special expertise of counsel from a distant district is shown' or 'local counsel are unwilling to handle the case.'"  *A.B. v. Pleasant Valley Sch. Dist.*, 839 Fed. Appx. 665, (3d Cir. 2020) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 705 (3d Cir. 2005)).  Plaintiffs do not disagree but assert that the second exception to the forum rule applies under *Honewell,* 426 F.3d 694, as the parents were unable to retain counsel in the forum even after enlisting the services of Volunteer Lawyers for Justice (VLJ) for assistance in finding a local attorney to take their case.  (*See* Pl. Brief at 14).

 The Court, having conducted a searching review of the record, concludes that Plaintiffs have satisfied the second *Honeywell* exception.   With the instant Motion, Plaintiffs' counsel submitted the sworn Declaration of Jessica Limbacher, Esq., a VLJ Staff Attorney at the time Plaintiffs sought the organization's assistance.  (Pl. Exh. L).  Ms. Limbacher confirms that Plaintiffs initially contacted VLJ, a Newark, New Jersey legal services organization, for representation by a VLJ attorney.  (Limbacher Decl., Pl. Exh. L ¶ 6).  When VLJ determined it could not take Plaintiffs' case due to a shortage of resources, the organization searched for other New Jersey attorneys willing to represent Plaintiffs on either a *pro bono* or contingent fee basis.  (*Id.* ¶¶ 7-10).  The Law Office of David J. Berney "was the only firm that VLJ identified who was

willing to represent Parents given Parents' inability to pay for legal services and the type of legal issues that this case involved." (*Id.* ¶ 10). On the record before it, the Court is satisfied that local counsel were unwilling to take on the instant litigation under the circumstances. As such, Plaintiffs are "entitled to compensation based on prevailing rates in the community in which [their] attorneys practice." *Honeywell*, 426 F.3d at 699.

In any event, the affidavit evidence submitted by Plaintiffs demonstrate that counsels' requested rates are within the reasonable range of those charged by special education lawyers of similar competence and experience in New Jersey, as well. (*See* Gran Decl., Pl. Exh. N; Reisman Decl., Pl. Exh. O). In its opposition, the District states that "[m]any parent attorneys in New Jersey charge their clients an hourly rate of $395-$420," but fails to provide any evidence in the record of those contrary rates. "[I]t is not enough merely to contest the claimed hourly rate; rather [defendant] must submit *evidence* of a different reasonable hourly rate." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 195 F. App'x 93, 98 n.4 (3d Cir. 2006) (emphasis in original). Pointing to District Court cases of ten years earlier or more in which lower fees were awarded to different attorneys in different cases is insufficient to rebut the reasonableness of the hourly rates proposed and does not merit a hearing on prevailing market rates. *Id.*

Mr. Berney and Ms. Russakoff have submitted evidence of their actual billing rates of $580.00 and $525.00 per hour, accompanied by five sworn Declarations of experienced education law practitioners attesting to the reasonableness of the proposed rates not only in the Philadelphia area, but in New Jersey, as well. Accordingly, the burden shifted to the District to rebut Plaintiffs' *prima facie* case as to the reasonability of the proposed rates, which burden the District failed to carry. Because, in the absence of appropriate record evidence to the contrary, the Court "may not

14

exercise its discretion to adjust the requested rate downward," the Court approves the proffered hourly rates as reasonable. *Washington*, 89 F.2d at 1036.

### ii.    Reasonable Hours

The Court, having arrived at the hourly rates to be applied in its lodestar calculation, must determine whether the number of hours expended on the post-settlement litigation was reasonable. *Hensley*, 46 U.S. at 433.  A prevailing party "is not entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary."  *Honeywell*, 426 F.3d at 711 (citations omitted).  This task requires the Court to examine the record to determine that the hours for which counsel seek fees are not "unreasonable for the work performed." *Washington*, 89 F.3d at 1037.  "Compensable activities include the preparation of filing the lawsuit, background research, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing a favorable judgment, and travel among other things."  *T.B.*, 2012 U.S. Dist. LEXIS 44848 at *15-17 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 573 n.6, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)).  Counsel may further seek fees for time spent drafting and litigating a fee application. *Planned Parenthood v. Attorney General of the State of N.J.*, 297 F.3d 253, 268 (3d Cir. 2002).

In their opening brief, Plaintiffs sought attorneys' fees for 43.5 hours expended by Mr. Berney between January 18, 2021 and November 28, 2022 and 21.4 hours expended by Ms. Russakoff between May 27, 2022 and November 28, 2022. (Pl. Brief at 10).  The District contends that the hours claimed are excessive, unreasonable, and must be reduced.  (Deft. Brief at 21-25). Initially, the Court notes that, as discussed above, the evaluation costs owed by the District did not

15

become due to Plaintiffs until April 17, 2021.  It therefore did not become necessary for Plaintiffs' counsel to engage in compensable *enforcement* efforts until that date, when the District failed to comply with its agreed obligation.  Accordingly, the Court will exercise its discretion to reduce Mr. Berney's billed time by .7 hours, valued at $407.00, for work performed prior to the April 17, 2021 breach.  (*See* Billing Record of Berney, Pl. Exh. H).

The District further asserts with that the hours Plaintiffs' attorneys expended on motion drafting is excessive and unreasonable in light of their extensive experience litigating special education cases.  (Deft. Brief 24-25).  Mr. Berney and Ms. Russakoff seek fees for a total of 29 hours expended on their opening brief.  (*See* Pl. Reply, ECF No. 13 at 13).  As demonstrated by the Court's lengthy discussion and analysis above, the Motion presented a complex question of the District's liability to Plaintiffs for counsel fees accrued in enforcement given the procedural posture of the action.  The Court thus finds the attorneys' time expended on the moving brief to be reasonable.  The Court does find, though, that counsels' additional time claimed for work on the Reply is unreasonable and excessive.  (*See* Pl. Reply at 14-15).  Plaintiffs' revised total fee request, which increased the proposed lodestar from $36,465.00 to $49,729.50, was raised in their Reply brief.  (*Id.*).  Accordingly, the District did not have occasion to specifically object to the billing entries comprising that new sum.  Though the Court may only reduce a fee award in response to objections made by the opposing party, the District did specifically challenge the amount of time billed for counsels' motion work in its earlier opposition brief.  Thus, "[t]his is not a situation in which the Board has failed to raise objections to Plaintiffs' fee application."  *P.N.*, 2007 WL 1186552, at *6.  "Once the adverse party raises objections to the fee request, the ... court has a great deal of discretion to adjust the fee award in light of those objections." *Rosner v. Faloni L. Grp*., LLC, No. 20-CV-10279-KM-ESK, 2021 WL 933371, at *2 (D.N.J. Feb. 8, 2021) (quoting

16

Rode, 892 F.2d at 1183).  Having reviewed Plaintiffs' supplemental billing records and having found that some charges are indeed unreasonable and excessive given counsels' expertise and experience with regard to IDEA motion practice, the Court exercises its discretion to reduce the additional fees sought for time expended on the Reply, as set forth below.

Mr. Berney's supplemental time sheet represents that he expended 16.8 billable hours reviewing the District's opposition to the instant Motion and producing a Reply brief.  (Pl. Reply, Exh. J, ECF No. 142-10).  Ms. Russakoff submits bills for 7.1 hours expended on Reply-related activities.  (*Id.*).  Together, counsel therefore seek fees for 23.9 hours of work on Plaintiffs' Reply, nearly as much time as that billed for the opening brief of significantly greater complexity.  The Court finds this time excessive for such experienced counsel and determines that these activities should reasonably have been completed within 10 hours by Mr. Berney and 4 hours by Ms. Russakoff.  *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 721 (3d Cir. 1989) (noting that, "in setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires.").

The Court will further reduce the fees sought by counsel for their work on July 21, 2022, representing 2.6 hours billed by Ms. Russakoff for time spent drafting, revising, or filing a "letter reply to District's response to Motoin (sic) to Enforce," and 1.4 hours billed by Mr. Berney for his time spent corresponding with Ms. Russakoff about the responsive letter and revising same.  (*See* Pl. Exhs. H, I).  The Court has reviewed counsel's July 21, 2022 letter of less than two pages and finds that the claimed total of four hours expended is excessive in light of counsels' experience and the fact that the letter was comprised of simple background of the case and a request for leave to seek attorneys' fees.  (*See* ECF No. 126).  The Court finds that this activity warrants .5 hours of

17

each attorney's time and will reduce the fee award as such.  Incorporating the reductions detailed herein, Plaintiffs' lodestar is $42,126.50.

Turning to the District's remaining contentions, it is argued that certain entries on counsels' billing records are not described with sufficient specificity to allow the Court to determine whether the hours claimed are unreasonable.  (*Id.* at 21-23).  The Court does not agree.  In support of this fee application, Plaintiffs' counsel submitted detailed billing records itemizing the attorneys' activities and time billed for such work.  (*See* Billing Records of Berney and Russakoff, Pl. Exhs. H, I).  The Third Circuit has explained that the "documentation requirements for time charged are not exacting."  *Tenafly*, 195 Fed. App'x at 100.  Having reviewed line-by-line the billing records at issue here, the Court finds that the entries are sufficiently clear to understand the tasks to which Mr. Berney and Ms. Russakoff devoted their time.  Accordingly, that argument by the District is rejected.

The Court is likewise not persuaded by the District's argument that counsels' claimed hours should be reduced on the basis that they have billed for time spent on "unnecessary interoffice emails and conferences."  (Deft. Br. at 24).  As noted above, prevailing parties may be compensated for "productive attorney discussions" and "reading mail related to the case."  *T.B.* 2012 U.S. Dist. LEXIS 44848 at *15-17.  Moreover, the suggestion that counsel may not be awarded fees for participating in the Court conferences convened by the undersigned to address the District's failure to comply with the Settlement Agreement will not be entertained.

Finally, the District contends that Plaintiffs have wrongfully "double billed" by seeking fees for the time expended by both Mr. Berney and Ms. Russakoff.  The Court, having reviewed and compared the billing records of the attorneys, holds reasonable and non-duplicative the charges listed, as Mr. Berney's supervising and revising the work of Ms. Russakoff "is not double-

18

billing because, logically, supervision of work is a task separate from the work itself." *Hilburn v. New Jersey Dep't of Corr.,* No. CIV. 7-6064, 2012 WL 3864951, at *4 (D.N.J. Sept. 5, 2012).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' application for attorneys' fees is **GRANTED,** excepting the reductions of time as set forth herein.  Plaintiffs are entitled to recover $42,126.50 in attorneys' fees.  Plaintiffs shall submit a proposed Order in accordance with this Opinion.


_s/ Leda Dunn Wettre_
Hon. Leda Dunn Wettre
United States Magistrate Judge

Dated:  April 26, 2023